NOTICE
Decision filed 10/28/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230454-U

NO. 5-23-0454

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| ALISON HUNTER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 12-D-104 |
| | ) | |
| ROBB HUNTER, | ) | Honorable |
| | ) | Emily J. Nielsen, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Vaughan and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's decision to terminate the respondent's maintenance obligation and award reimbursement of overpayments beginning June 8, 2018, was not against the manifest weight of the evidence.

¶ 2    The petitioner, Alison Hunter, appeals the circuit court's decision to terminate her award of maintenance and grant reimbursement of maintenance payments to the respondent, Robb Hunter. For the following reasons, we affirm the circuit's decision.

¶ 3                                I. BACKGROUND

¶ 4    The parties were married on July 19, 1996, and a judgment of dissolution of marriage was entered on August 15, 2014. The circuit court awarded the petitioner maintenance in the amount of $2000 per month, to be modified and terminable as provided by law. The judgment also ordered the parties to alternate the tax exemption/deduction for their minor child annually, beginning with

1

the respondent in tax year 2014, and continue until the child was no longer able to be claimed for tax purposes.

¶ 5       On June 11, 2020, the respondent filed a motion to terminate maintenance. The respondent alleged that the petitioner was cohabitating with Rodney Lanham, and they had been in an intimate dating relationship for approximately five years. Lanham and the petitioner purchased real estate together in June of 2018 and built a house together on that land. The respondent requested that the circuit court terminate his maintenance obligation retroactively from the date when the cohabitation began.

¶ 6       The petitioner filed a petition for indirect civil contempt and claimed that the respondent claimed their minor child as a tax exemption for the tax year of 2015 and each subsequent year thereafter. The respondent admitted to claiming the minor child as a dependent on his tax returns.

¶ 7       The parties agreed to suspend the respondent's maintenance obligation in an order entered on September 16, 2020. The issue of permanent termination of maintenance and any overpayment reimbursements remained at issue.

¶ 8       The circuit court held a contempt hearing as well as a hearing on the issue of maintenance reimbursements on March 23, 2023. The petitioner and the respondent were the only witnesses to testify.

¶ 9       The petitioner testified that she had been in a relationship with Lanham for five or six years. He became her fiancé in 2021, at Christmas time. During the time period of June 2018 to 2020, Lanham would travel four or five days a week for work and would stay with the petitioner one or two nights a week when he returned to the Edwardsville area. The petitioner vacationed with Lanham at least once a year, and the petitioner would sometimes pay for her own transportation in cash. They would also spend holidays together with their families. In October of 2018, Lanham

2

purchased a $90,000 vehicle for the petitioner as a birthday present, and both Lanham and the petitioner were listed as the registered owners.

¶ 10    Lanham owned his own business, and since 2018, the petitioner received health insurance through Lanham's business. The petitioner testified that she worked for Lanham and would receive health insurance as compensation for her employment in lieu of a paycheck. In 2017, the petitioner and Lanham began sharing a family cell phone plan in Lanham's name. The petitioner testified that she would repay Lanham for her portion of the bill. Lanham owned and maintained his residence in Glen Carbon, Illinois, and the petitioner maintained her own residence. Lanham did not have a key to the petitioner's residence until July 1, 2020, when they moved into their new house together.

¶ 11    Lanham purchased land in 2018, with the intent to build a lake house. The deed was issued on June 8, 2018, and listed the petitioner and Lanham as joint tenants with the right of survivorship. The petitioner testified that she used her mailing address on the deed for future tax bills because the new house had not been constructed and Lanham frequently travelled for work. On January 15, 2019, a building permit was issued in both the petitioner and Lanham's names and listed the petitioner's mailing address.

¶ 12    The petitioner and Lanham opened a joint bank account on March 1, 2019. The petitioner testified that account was for building expenses, and their builder was also listed on the bank account. The petitioner had the ability to write personal checks from that account. A fishing boat was purchased from their joint account and a $2000 payment was also made from the joint account to help pay for a truck for the petitioner's son. The petitioner maintained that she did not cohabitate with Lanham until July 1, 2020, when they were able to move into their new house together.

3

¶ 13    The respondent testified that he saw the petitioner and Lanham in public together during the time frame of 2018 to 2020 and they appeared to be in a dating relationship. In 2019, he discovered that the petitioner had purchased property with Lanham. When the respondent would spend time with his son, he would see Lanham's car at the petitioner's house. From June of 2018 to July 1, 2020, the respondent estimated that he saw Lanham's car at the petitioner's house three or four times a month. The respondent additionally testified that he prepared his own taxes and admitted that he claimed his son as a dependent every year.

¶ 14    The circuit court took the matter under advisement and both parties submitted proposed orders. The circuit court found that the petitioner and Lanham were in a relationship with "a deeper level of commitment and intended permanence." Based on the evidence presented and the totality of the circumstances, the circuit court found that the petitioner and Lanham began cohabitating on a continual, conjugal basis no later than June of 2018. The circuit court found that the respondent had paid maintenance to the petitioner through July 1, 2020.

¶ 15    The circuit court issued an order on May 26, 2023, modifying the respondent's maintenance obligation to $0 effective June 8, 2018. The payments made to the petitioner by the respondent after June 8, 2018, until July 1, 2020, were overpayments. The respondent had overpaid the petitioner $56,000. The circuit court found the respondent in indirect civil contempt and ordered him to pay the petitioner the sum of $4000 for claiming their son as a dependent on his tax returns in years when he was not permitted to do so. The respondent was additionally ordered to pay attorney fees in the amount of $2575, for a total of $6575, to purge himself of contempt. After the credit and fees were applied, the petitioner was ordered to pay the respondent the sum of $49,425 within 90 days of the entry of the order. This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, the petitioner argues that the circuit court erred in granting the reimbursement

of maintenance payments as of June 8, 2018. We disagree.

¶ 18    Section 510(c) of the Illinois Marriage and Dissolution of Marriage Act provides that,

> "(c) Unless otherwise agreed by the parties in a written agreement set forth
> in the judgment or otherwise approved by the court, the obligation to pay future
> maintenance is terminated upon the death of either party, or the remarriage of the
> party receiving maintenance, or if the party receiving maintenance cohabits with
> another person on a resident, continuing conjugal basis. An obligor's obligation to
> pay maintenance or unallocated maintenance terminates by operation of law on the
> date the obligee remarries or the date the court finds cohabitation began. The
> obligor is entitled to reimbursement for all maintenance paid from that date
> forward. Any termination of an obligation for maintenance as a result of the death
> of the obligor, however, shall be inapplicable to any right of the other party or such
> other party's designee to receive a death benefit under such insurance on the
> obligor's life. An obligee must advise the obligor of his or her intention to marry at
> least 30 days before the remarriage, unless the decision is made within this time
> period. In that event, he or she must notify the obligor within 72 hours of getting
> married." 750 ILCS 5/510 (West 2022).

¶ 19    When determining whether a party is engaged in a "resident, continuing conjugal"

relationship to terminate maintenance, the moving party must show that the recipient of

maintenance is in a *de facto* husband-wife relationship or "cohabitating with someone." *In re*

*Marriage of Edson*, 2023 IL App (1st) 230236, ¶ 111. The moving party has the burden of

establishing that the party receiving maintenance is cohabiting with another. *In re Marriage of*

*Miller*, 2015 IL App (2d) 140530, ¶ 40.

¶ 20    The determination of whether a relationship is a *de facto* marriage is a question of fact "as

no two relationships are alike, no two cases are alike." *Miller*, 2015 IL App (2d) 140530, ¶ 40.

Courts will consider the totality of the circumstances in determining whether a party is involved

in a *de facto* marriage and consider the following non-exhaustive list of factors: "(1) the length of

the relationship; (2) the amount of time the couple spends together; (3) the nature of activities

5

engaged in; (4) the interrelation of their personal affairs; (5) whether they vacation together; and (6) whether they spend holidays together." *In re Marriage of Sunday*, 354 Ill. App. 3d 184, 189 (2004). A circuit court's decision to terminate maintenance based on the existence of a *de facto* marriage will be upheld unless that ruling is against the manifest weight of the evidence. *Miller*, 2015 IL App (2d) 140530, ¶ 40.

¶ 21    In this case, the circuit court found that the petitioner and Lanham had more than an intimate dating relationship, as they had "a deeper level of commitment and intended permanence." Evidence was presented that the petitioner entered into a dating relationship with Lanham in 2016 or 2017, and they are now engaged. Lanham would travel four or five nights of the week for work, and he would stay with the petitioner for one or two days of the week when he was not travelling. The petitioner and Lanham took vacations together throughout their relationship. They would also spend holidays together, along with their families.

¶ 22    The petitioner benefited financially from her relationship with Lanham. Lanham had purchased a $90,000 vehicle for the petitioner in 2018, and the vehicle was registered in both of their names. The petitioner received health insurance through Lanham's company since January 1, 2018, and the petitioner and children have been on Lanham's family cell phone plan since 2017 or 2018. The petitioner and Lanham purchased property together on June 8, 2018, and both of their names were listed on sales documents. The petitioner applied for a building permit on January 15, 2019, and her address was on the permit for both her and Lanham. They also opened a joint banking account on March 1, 2019, together with their builder, and that account was primarily used for construction of their new home. The petitioner, however, had access to the account and the ability to write checks on the account. The account was also used to purchase a fishing boat, and the petitioner used the account to write a $2000 check for her son.

6

We have thoroughly reviewed the record on appeal and conclude that it does not demonstrate that the circuit court's decision was against the manifest weight of the evidence. The circuit court's determination that the petitioner had entered into a *de facto* marriage as of June 8, 2018, warranted termination of maintenance and reimbursement of payments to the respondent.

¶ 23                              III. CONCLUSION

¶ 24    For the foregoing reasons, we affirm the judgment of the circuit court of Madison County.

¶ 25    Affirmed.